IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 4:21-CR-00268-O |
| MARK FORKNER (01) | |

## DEFENDANT MARK FORKNER'S REPLY TO THE GOVERNMENT'S RESPONSE (DOC. 61) TO HIS MOTION *IN LIMINE* (DOC. 44)

With the leave of the Court (separately requested in a motion for leave), Mr. Forkner files the following reply to the government's response (ECF No. 61) to his motion to exclude/motion *in Limine* (ECF No. 44).

### Category 1:  Crash victim-impact evidence.

With respect to the types of crash victim-impact evidence listed in Mr. Forkner's motion (ECF No. 44, at 1-2), the government advises that it does not intend to introduce such evidence and "would not oppose an order precluding such evidence."  (ECF No. 61, at 1)  This Court should therefore enter such an order.

More troubling is the government's statement that it

> does intend to offer evidence of other facts of the Lion Air and Ethiopian Airlines crashes – including when how, and what witnesses from the FAA AEG, Boeing, and pilots from Airline-1 and Airline-2, learned about how MCAS was operating on each of those flights.  This crash-related evidence would be offered, among other things for the relevant, but limited purposes of showing when and how MCAS's low-speed expansion was first exposed to the FAA AEG, Airline-1 and Airline-2, and their respective pilot stakeholders, and the steps and time it took the FAA AEG and these airlines and their respective pilot stakeholders to evaluate the true operational scope of MCAS that the defendant withheld from the FAA AEG and ultimately Airline-1 and Airline-2.

(ECF No. 61, at 2)  The government further claims that

[t]he crash-related evidence is also relevant to the defendant's mental state in concealing his alleged fraud.  After the Lion Air crash, the defendant who at the time had left Boeing and was employed by Airline-2, provided a senior colleague at Airline-2 with false information concerning his purported discussions with the FAA AEG about MCAS and the FAA AEG's evaluation of MCAS.  The above-referenced crashes are therefore admissible to prove how the defendant's fraud was uncovered and the steps that the defendant took to cover his tracks.

(ECF No. 61, at 2).

Although the government characterizes this crash-related evidence as "limited," it is in fact extremely broad, not to mention irrelevant (or only marginally relevant) and unfairly prejudicial to Mr. Forkner.  Particularly, to allow witnesses to testify as to "what [the witnesses] learned about how MCAS was operating on each of those flights" (ECF No. 61, at 2) is tantamount to allowing the government to argue that MCAS was the cause of the two crashes.  The unfair, but obvious, implication will be that Mr. Forkner was ultimately cause of the two crashes.  That will open the door to Mr. Forkner's introducing evidence that the crashes were caused by other things — such as a bad design that allowed MCAS to activate on a single angle-of-attack sensor; or a malfunctioning angle-of-attack sensor, or pilot error.  And before long, the trial in this case will be swallowed up by a collateral trial on what caused the two crashes.

The government is also off base when it claims that evidence of the crashes is somehow relevant to showing Mr. Forkner's intent.

Any evidence about the crashes beyond this has no, or only minimal, probative value.  And certainly, any slight probative value such evidence might have is vastly outweighed by the unfairly prejudicial effect of implying that Mr. Forkner was responsible for the deaths of 346 persons.  Accordingly, the Court should preclude any evidence of the crashes.  In the alternative, the Court

should require the government to approach the bench before adducing any evidence respecting the two crashes.

### *Category 2: Subsequent remedial measures*.

As an initial matter, the government argues that the examples of subsequent remedial measures were not "undertaken by Boeing," but rather required by the FAA, therefore rendering Fed. R. Evid. 407 inapplicable.  (ECF No. 61, at 2-4)  To be sure, some courts have held that Rule 407 "is not implicated in cases involving subsequent measures in which the defendant did not voluntarily participate."  *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 817 (9th Cir. 1989); *cf. Koonce v. Quaker Safety Products & Mfg. Co*, 798 F.2d 700, 719-20 (5th Cir. 1986) (holding that Rule 407 does not bar evidence of subsequent repairs made by someone else other than the defendant).

Even so, the Court should not give an unconditional green light to the government to introduce evidence of subsequent remedial measures.  Rather, this Court should follow the lead of the United States District Court for the Northern District of California in the Theranos case, and defer any Rule 407 ruling until it has a factual predicate for the voluntariness *vel non* of the subsequent remedial measures taken in this case.  *See United States v. Holmes*, Case No. 5:18-cr-00258-EJD-1, 2021 WL 2044470, at *22 (N.D. Cal. May 21, 2021).

But there is a reason why the Court should exclude this evidence now – namely, that its probative value is vastly exceeded by the unfairly prejudicial effect to Mr. Forkner.  *See* Fed. R. Evid. 403.  *Cf. Koonce*, 798 F.2d at 720 (holding that, while Rule 407 did not bar admission of evidence, the district court did not abuse its discretion in excluding the evidence under Rule 403); *Grenada Steel Industries, Inc. v. Alabama Oxygen Co., Inc.*, 695 F.2d 883, 889 (5th Cir. 1983)

(same).  First, the use of subsequent remedial measures that Boeing (or, as the government would have it, the FAA) decided were necessary *post hoc* is of very low probative value concerning what **Mr. Forkner** thought was necessary before the fact (especially since, as we expect the evidence will show, Mr. Forkner did not know of the design defect in making MCAS contingent solely upon a single angle-of-attack sensor).  After all, hindsight is 20/20.  Second, the evidence is unfairly prejudicial to Mr. Forkner because it unfairly plants in the jury's minds the notion that what he did was inadequate – notwithstanding what he knew or, more importantly, did not know – simply because something different was done after the crashes.

For these reasons, this Court should exclude evidence of subsequent remedial measures, or, in the alternative, should require the government to approach the bench before attempting to adduce such evidence.


***Category 3:  Summary witness(es) and summary testimony.***

First, the government states that it "does not intend to call an overview witness in this case." (ECF No. 61, at 4)  Mr. Forkner's motion should therefore be granted at least to that extent.

But the government should also be precluded from using a case agent as a summary witness in any other fashion.  *Id.*  Summary witnesses are allowable only in complex cases, and even then only for limited purposes.  *See United States v. Fullwood*, 342 F.3d 409, 413-14 (5th Cir. 2003).  But here, the government has essentially disavowed the notion that its case is "complex."  In its response to Mr. Forkner's first motion for continuance, the government represented "that its case-in-chief can be presented in one week or less."  (ECF No. 18, at 2)  It further represented that "the documents [it] intends to use and reference in its case-in-chief will be substantially smaller [in number than the 16,000 "hot documents" it designated in discovery] and more manageable."

These facts do not bespeak the sort of complexity that the case law requires for the proper use of summary witnesses (including the need to summarize voluminous evidence, *see* Fed. R. Evid. 1006). Rather, they suggest that the summary witness's testimony will consist in large part of simply "summarizing and organizing the case for the jury," as "a substitute for, or a supplement to, closing argument." *Fullwood*, 342 F.3d at 414.

Calling the case agent at the close of the case "to use a demonstrative exhibit to place certain events and emails in chronological order" (ECF No. 61, at 4) is precisely the type of summary-witness testimony that should be barred because it is nothing more than "rebuttal testimony by an advocate summarizing and organizing the case for the jury . . . ." *Fullwood*, 342 F.3d at 414. In fact, such testimony is nothing but "a substitute for, or a supplement to, closing arguments." *Id.* While nothing prevents the government from using such a demonstrative exhibit during closing argument (assuming that the facts summarized are in evidence), the government is not entitled to have a summary witness do so.

The other uses to which the government claims it will put its case agent raise different issues. For example, using the agent as a sponsor to introduce evidence of Mr. Forkner's emails (Doc. 61, at 4) would not seem to constitute forbidden summary-witness testimony, although it may be questioned whether the agent is qualified to sponsor that evidence. Similarly, testimony by the agent about the meaning of "certain terminology" in those emails (ECF No. 61, at 4) would not seem to constitute forbidden summary-witness testimony, although it may well be objectionable on other grounds (such as the agent's qualifications to give such testimony).

The government should therefore be precluded from using a summary witness in this case. In the alternative, the government should be required to approach the bench before using such a witness, so that the Court may at that time evaluate whether that use is permissible.

**Category 4:  Hypothetical questions assuming Mr. Forkner's guilt of the charges against him.**

The government agrees that it will not use guilt-assuming hypotheticals to cross-examine any character witnesses called by Mr. Forkner.  (ECF No. 61, at 5)  Mr. Forkner's motion to preclude/motion *in limine* should therefore be granted at least to that extent.

Mr. Forkner's motion goes further than this, however.  He urges that the government should not be able to propound, to ***any*** witness, questions that assume Mr. Forkner's ultimate guilt of the charges against him, or elements of those charges – for example:

> Q.     Would the information that Mr. Forkner concealed from the FAA about MCAS have influenced your decision?

This question obviously assumes that Mr. Forkner concealed – *i.e.*, intentionally withheld – information from the FAA, and improperly usurps the jury's function of making that determination by themselves, based only on evidence.

The government, however, claims the right to ask fact witnesses whether the allegedly withheld information bore, or would have borne, upon the decision-making process of the alleged victims of deceit (the FAA, Airline-1, and Airline-2).  *Id.*  The answer is that (1) as long as the government does not ask for the witness's opinion about whether the allegedly withheld information was "material" (which improperly calls for a legal conclusion that is the province of the jury), and (2) as long as the government does not, in propounding the question, state assumptions about Mr. Forkner's guilt of the charged offenses, or elements of the charged offenses,

6

the government is perfectly free to ask fact witnesses questions designed to elicit the facts enabling the jury to find materiality – for example:

> Q.      If [Airline-1] had known that MCAS had been expanded to lower Mach speeds, would that decision have influenced [Airline-1's] decision to buy the 737-MAX?

The upshot is that words matter, and the government, more than anyone else, should be careful about its words.  A bar on questions assuming Mr. Forkner's guilt will not in any way impinge upon the government's ability to make its case.  Accordingly, the Court should grant Mr. Forkner's motion with respect to this category.


### Category 5:  Legal conclusions and witness opinions about the law.

The government agrees that it will not elicit legal conclusions or witnesses' interpretations or opinions about the law.  (*Id.* at 7)  Mr. Forkner's motion should therefore be granted in that respect.

The government protests, however, that this prohibition should not bar the government from eliciting testimony that shows (rather than simply proclaims) that the allegedly withheld information in this case is "material" or that MCAS is a "part" of the 737-MAX aircraft within the meaning of 18 U.S.C. § 38.  (*Id.* at 8-9)  The government misunderstands what Mr. Forkner is saying.  The government remains free to adduce into evidence the brute facts that enable the ***jury*** to make these conclusions.  All that Mr. Forkner is saying is that no witness should be asked to opine upon whether the allegedly withheld information was "material," and no witness should be asked whether MCAS is a "part" of the aircraft.  Likewise, the government should instruct its witnesses not to express the ultimate conclusions that the allegedly withheld information was "material" or that MCAS is a "part."  (And, to make it perfectly clear, the government is wrong

when it says that witnesses should be able to use the word "material" in this context.  *See Id.*  at 9.)

### *Category 6:  Testimony from pilots expressing the opinion that they would have liked to have known about the existence of MCAS.*

The government claims that the testimony of pilots is relevant to the materiality of the information Mr. Forkner is alleged to have withheld from the FAA and the two airlines mentioned in the indictment.  (*Id.* at 10)  But the government is simply wrong about this.

Generally, information "'is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed.'"  *United States v. Curtis*, 635 F.3d 704, 719 n.51 (5th Cir. 2011) (quoting *Neder v. United State*s, 527 U.S. 1, 16 (1999)) (internal quotation marks, brackets, and citation omitted by the *Curtis* court); *accord, e.g., United States v. Camick,* 796 F.3d 1206, 1218 (10th Cir. 2015).  Put another way, "a false statement can support a [fraud] conviction only if the alleged victim considered the false statement to be material."  *United States v. Perry*, 527 Fed. Appx. 347, 349 (5th Cir. 2013) (unpublished) (footnote omitted).

Here, the alleged victims are the FAA, Airline-1, and Airline-2.  The question for trial, then, is what effect did the allegedly withheld information have on the decisions made by ***those entities***?  Although the government struggles to sweep the pilots under the umbrella of the airlines for whom they worked by an argument that they are "stakeholders," the fact of the matter is that the pilots are ***not*** the victims of the charged fraud offenses.  For materiality purposes, therefore, the opinions of two non-victim pilots about whether they thought MCAS should have been disclosed and explained are irrelevant to the question of the materiality of the withheld information to the actual victims/decisionmakers.  Indeed, the airlines' decision was whether to buy the aircraft

or not, and the relevant question – answerable only by the airline employees who were charged with making that decision—is what they would have done on that score had the allegedly withheld information about MCAS been disclosed.  The pilots' opinion that MCAS should have been disclosed sheds no light on the counterfactual materiality question.

Furthermore, even if the evidence had some minimal probative value, that value is significantly outweighed by the unfair prejudicial effect of allowing airline pilots (in whom many Americans repose trust and admiration) to essentially opine that the 737-MAX was unsafe to fly without the allegedly withheld information.  Even if the Court does not preclude this evidence on relevance grounds, it should still preclude it under Fed. R. Evid. 403.

### *Category 7:  Evidence, cross-examination, or argument about Mr. Forkner's pre- or –post-arrest silence, or the exercise of his Fifth Amendment right against self-incrimination or his Sixth Amendment right to counsel.*

As an initial matter, the government does not oppose Mr. Forkner's motion to preclude evidence of, or argument referring to, post-arrest silence, and it represents that it "would not present any such evidence, argument, or cross-examination."  (ECF No. 61, at 11)  Mr. Forkner's motion should be granted at least to that extent.

The government then states that, although "[it] does not currently intend to offer any case-in-chief evidence or argument about the defendant's refusal to speak with the United States during the investigation, [Mr. Forkner] may open the door to such evidence."  (*Id.* at 12)  The government correctly cites *Jenkins v. Anderson*, 447 U.S. 231 (1980), and a Fifth Circuit case, for the proposition that the use of pre-arrest silence to impeach a defendant does not violate the Fifth Amendment.  (ECF No. 61, at 12)

But that is not the end of the story.  In *Jenkins v. Anderson*, the Court reiterated that "[it] ha[d] exercised its supervisory powers over federal courts to hold that prior silence cannot be used

for impeachment where silence is not probative of a defendant's credibility and where prejudice to the defendant might result." *Jenkins v. Anderson*, 447 U.S. at 239 (footnote and citations omitted).  As the First Circuit has noted, "[*United States v.*] *Hale*[, 422 U.S. 171 (1975),] teaches . . . (1) that silence *per se* has little or no probative value for impeachment purposes, and (2) that evidence of the invocation of the right to remain silent is inherently prejudicial.  Thus a proffer of such evidence should be rejected unless special circumstances exist in a given case that materially shift the balance in favor of admissibility."  *United States v. Zaccaria*, 240 F.3d 75, 79 (1st Cir. 2001).  Accordingly, this Court should grant Mr. Forkner's motion *in limine* as to evidence of ***pre-arrest*** silence and require the government to approach the bench before attempting to introduce such evidence, to determine whether the government can demonstrate the "special circumstances" that would render such evidence admissible.

*   *   *   *

For the foregoing reasons, as well as those contained in Mr. Forkner's original motion, the Court should grant Mr. Forkner's motion to preclude/motion *in Limine*.

10

Respectfully submitted,

*/s/ Jeff Kearney*
JEFF KEARNEY
Texas Bar Number: 11139500
CATHERINE STANLEY
Texas Bar Number: 24110542
KEARNEY LAW FIRM
One Museum Place
3100 West 7th Street, Suite 420
Fort Worth, Texas 76107
jkearney@kearneylawfirm.com
cstanley@kearneylawfirm.com
Phone: 8l7-336-5600
Fax: 817-336-5610

*/s/ David Gerger*
David Gerger
State Bar No: 07816360
GERGER HENNESSY & MCFARLANE LLP
1001 Fannin, Suite 2450
Houston, Texas 77002
dgerger@ghmfirm.com
Phone: 713-224-4400
Fax: 713-224-5153

## *CERTIFICATE OF SERVICE*

I hereby certify this Motion was electronically filed, and Assistant United States Cory Jacobs was electronically served via this Court's Electronic Filing System on this 20th day of December 2021.

/s/
JEFF KEARNEY